IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICK DEVRIES,

OPINION and ORDER

Plaintiff,

09-cv-636-bbc

v.

MICHAEL ASTRUE,
Commissioner of Social Security,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Rick Devries seeks reversal of the commissioner's decision that because he is not disabled, he is not eligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(I), 423(d) and 1382(c)(3)(A).

Plaintiff contends that the administrative law judge erred in assessing plaintiff's credibility and in evaluating the medical opinions concerning his fibromyalgia. Having carefully reviewed the record and the administrative law judge's decision, I am rejecting plaintiff's arguments and affirming the commissioner's decision. I find that the

1

administrative law judge properly assessed plaintiff's credibility and properly evaluated the medical opinions.

The following facts are drawn from the administrative record (AR).

FACTS

A. Background

Plaintiff was born on December 12, 1959.  AR 25.  He had a high school education, AR 27, and past work experience as assistant manager and cashier.  AR 19.

Plaintiff filed an application for disability insurance benefits and supplemental security income on July 14, 2006, alleging that he had been unable to work since January 1, 2006 because of fibromyalgia and depression.  AR 13.  In the Physical Activities Questionnaire he completed in support of his application, plaintiff listed his activities as walking around his farm, driving to town, preparing meals and doing household chores, including laundry and shopping.  AR 136-44.

After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on March 26, 2009 before Administrative Law Judge Sharon L. Turner.  The administrative law judge heard testimony from plaintiff,  AR 25-36,  a medical expert, who was a doctor of internal medicine, AR 36-41, and a vocational expert, AR 41-45.  At the hearing, plaintiff amended his onset date to

2

September 21, 2006.  AR 26.  On July 1, 2009, the administrative law judge issued her decision, finding plaintiff not disabled.  AR 13-20.  This decision became the final decision of the commissioner on August 28, 2009, when the Appeals Council denied plaintiff's request for review.  AR 1-4.

### B. Medical Evidence

#### 1. Dr. Gerald W. Grim 2003-2005

On October 15, 2003, Dr. Gerald W. Grim treated plaintiff for general pain after plaintiff had a diagnosis of Lyme's disease.  On examination, Grim noted that plaintiff had multiple trigger point tenderness, axial and peripheral.  AR 197.  On November 18, 2003, plaintiff saw Grim, complaining of being tired and having morning stiffness, general aches and malaise.  Grim diagnosed fibromyalgia with questionable Lyme recurrence.  AR 199.  When plaintiff saw Grim on December 17, 2003, his fibromyalgia was responding well to Lexapro.  Grim had plaintiff cancel a rheumatology consultation because of his good response to medication.  AR 207.

On February 10, 2004, Dr. Grim saw plaintiff and noted that his fibromyalgia symptoms had largely abated.  AR 212.  On March 20, 2004, plaintiff returned to see Grim, hoping to obtain disability because of his chronic fatigue and pain.  Grim noted that, although plaintiff reported that his symptoms had improved on Lexapro, he had stopped

3

taking the medication because of bloating and sexual dysfunction.  AR 216.  Grim diagnosed chronic recurring rheumatologic concerns with a depression equivalent.  AR 217.  In May 2004. Grim prescribed Vicodin for plaintiff.  AR 223.

On August 3, 2004, Dr. Grim saw plaintiff and noted that his fibromyalgia was responding again to the Lexapro.  AR 229.  On December 16, 2004, Grim saw plaintiff to discuss an increase in his Vicodin dosage.  Although plaintiff reported he was better able to function on the Vicodin, Grim  was uncomfortable with the amount of Vicodin plaintiff was requesting.  However, he increased the dosage.  AR 237.  On January 7, 2005, plaintiff saw Grim, who noted his symptoms were stable.  AR 241.  On January 26, 2005, Grim noted that plaintiff was doing better managing his fibromyalgia symptoms.  AR 244,

On April 28, 2005, a pharmacist informed Dr. Grim that over the past three and a half months plaintiff had obtained 1,080 Vicodin tablets at different pharmacies.  AR 245.  On May 3, 2005, Grim saw plaintiff, telling him that it appeared he had taken an average of 10 Vicodin a day when he was supposed to be taking only four.  Grim suggested that he had broken his agreement on Vicodin use and was a narcotic seeker.  Grim wrote, "He gave me a story that he was squirreling away a supply in case he was cut off at some time in the future."  Plaintiff also stated that his supply was stolen.  Grim asked plaintiff to wean himself off the Vicodin.  AR 246-47.

4

2.  Dr. Terri A. Hahn 2006-2009

On January 4, 2006, plaintiff began seeing Dr. Terri A. Hahn for pain management. AR 271.  She noted that plaintiff reported that recently he had tried a friend's Fentanyl patch and found it to be quite helpful.  On exam, Hahn noted that trigger points were positive in plaintiff's anterior chest, upper back, posterior lower back, medial knees and thighs.  Hahn prescribed a Fentanyl patch for plaintiff and had him sign a narcotic contract. AR 271-72.  On February 10, 2006, Hahn noted that plaintiff was doing well on the Fentanyl patch.  However, plaintiff reported that the patch wore off a few hours before its complete 72-hour "focus."  AR 269.

On July 5, 2006, plaintiff saw Dr. Hahn and reported that the Fentanyl patch worked well for the first 48 hours but then did not provide significant relief.  Also, he reported thinking about filing for some partial disability because he had hand stiffness, mild fatigue and pain in his hips, knees, back and chest.  Hahn changed the interval on plaintiff's Fentanyl patch to 48 hours.  AR 262.  On September 15, 2006, plaintiff saw Dr. Hahn and reported losing his job because "he was just not able to keep up with the requirements of the job, including physical activity and time."  AR 305.

On December 6, 2006, Dr. Hahn wrote a letter stating that plaintiff had post-Lyme syndrome, depression and fibromyalgia and that he could lift no more than five pounds and could not sit or stand in one position for more than 30 minutes at a time.  She concluded

5

that he was unable to perform any work and should be considered totally disabled.  AR 292.

On January 22, 2007, plaintiff saw Dr. Hahn for complaints of chronic pain. She prescribed Amitriptyline.  AR 303-304.  On March 1, 2007, she worked with plaintiff to complete a multiple impairment questionnaire.  She listed her diagnoses as post-Lyme syndrome, fibromyalgia syndrome, depression and osteoarthritis and stated that plaintiff had multiple trigger points, flat affect and that he could sit or stand or walk 30 minutes at a time, lift or carry five pounds and had difficulty with gripping.  Also, Hahn noted that plaintiff would have to take unscheduled rest breaks every hour and would miss more than three days of work a month.  AR 314-21.

On March 31, 2008, plaintiff saw Dr. Hahn for fibromyalgia and depression and reported that he had stopped taking Cymbalta because it was making him sick.  On examination, Hahn noted that plaintiff had multiple trigger points.  AR 387-88.  On April 1, 2008, Dr. Hahn wrote a letter on plaintiff's behalf, stating that plaintiff's condition had not changed since March 2007 and that he continued to be unable to work.  AR 350-51.

On August 11, 2008, plaintiff saw Dr. Hahn for discussion of his medical problems and completion of a new disability form.  Hahn noted that plaintiff seemed to have tolerable pain control on the Fentanyl patch and the addition of Lyrica.  She increased his Lyrica dosage and gave him a trial of steroids.  AR 384-86.

On September 2, 2008, Dr. Hahn wrote another letter on plaintiff's behalf stating

6

that plaintiff had good and bad days.  She concluded that even on a good day plaintiff would not be able to work for even four hours a day.  AR 363.  The same date she completed a multiple impairment questionnaire with plaintiff, stating that he had multiple trigger points, flat affect and was unable to get out of a chair.  He could sit or stand or walk 30 minutes at a time, could lift or carry five pounds and had poor grip.  Also, Hahn noted that plaintiff would have to take unscheduled rest breaks every hour and would miss more than three days of work a month.  AR 364-71.

When plaintiff saw Dr. Hahn on September 16, 2008, he reported cutting his pain patch in half.  Hahn warned him against doing this because of dosing consistency.  On examination, Hahn noted that he had fewer trigger points.  She recommended decreasing steroids.  AR 381-83.

Plaintiff returned to see Dr. Hahn on December 30, 2008, complaining that he had to switch brands on the pain patch and that it was not as effective.  He also complained of blurry vision.  She referred him to an opthamologist.  On examination, Hahn noted that plaintiff had very mild trigger points.  AR 379-80.

On March 2, 2009, plaintiff reported to Dr. Hahn that he did not go to the opthamologist because he had stopped taking the Lyrica and his vision had improved.  Also, he reported that he had not started the Citalopram as she had recommended.  Plaintiff complained of more achiness on the right side of his body since he had stopped taking the

7

Lyrica.  On examination, plaintiff had positive trigger points on his anterior chest, upper back, thighs and medial knees.  Hahn noted that plaintiff had difficulty getting up from supine to sitting and from sitting to standing.  She added a prescription of Nortriptyline for plaintiff's fibromyalgia and restarted the Citalopram.  AR 390-91.

## C.  Consulting Physicians

On October 30, 2006, state agency physician Zhen Lu completed a physical residual functional capacity assessment for plaintiff, listing a diagnosis of fibromyalgia.  AR 284.  Lu found that plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, stand or walk two hours in an eight-hour workday and sit six hours in an eight-hour work day.  AR 285.  On March 9, 2007, state agency physician Syd Foster affirmed Lu's assessment.  AR 322,

On March 15, 2007, state agency psychologist Jack Spear completed a Psychiatric Review Technique for plaintiff, diagnosing affective disorder.  AR 323  He concluded that plaintiff had mild restrictions of the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace and no episodes of decompensation.  He stated that there was no evidence of the presence of the "C" criteria and he concluded that plaintiff's mental impairment was not severe.  AR 323-26

8

D.  <u>Hearing Testimony</u>

Plaintiff testified that he stopped working on September 21, 2006.  AR 26.  He testified that at the time he was missing days of work, his fingers were going numb, he was having difficulty staying alert and he was experiencing pain.  AR 32-33.  He testified that he had numbness in his fingers and arms and in his right leg and pain in his hands, elbows, lower back and knees.  AR 29-30.  Plaintiff testified that he wore a Fentanyl patch for pain and took medication for his mood.  He said that he was depressed about his inability to work.  AR 31.

Plaintiff testified that he did light dusting, made microwave dinners, folded the laundry, went grocery shopping with his son and drove a car.  AR 27-28.  He testified that he spent most of the day lying down in bed or sitting in his lounge chair.  Plaintiff testified that he could sit for 15 to 20 minutes at a time and could stand for about the same amount of time.  AR 33.

The administrative law judge asked plaintiff why he had not gone to see the opthamologist as his treating physician had recommended.  Plaintiff explained that his blurred vision had cleared up after he stopped taking Lyrica and that he had no insurance.  AR 35.  Also, the administrative law judge asked plaintiff why he had not started taking Citalopram which the treating physician had prescribed.  Plaintiff responded that he had lost his prescription, but that he had begun taking the medication.  AR 35.

9

The administrative law judge called Dr. Sami A. Nafoosi, a doctor of internal medicine, to testify as a neutral medical expert. AR 36. Nafoosi testified that as of September 21, 2006, plaintiff had severe impairments of fibromyalgia and depression. AR 37. Nafoosi testified that these impairments individually or in combination did not meet or equal a listed impairment. He concluded that plaintiff would be limited to jobs where he would not have to lift more than 10 pounds frequently and 20 pounds occasionally. AR 38. Plaintiff's counsel asked Nafoosi what these restrictions were based on. He responded as follows:

> I looked at the objective findings. All I could see was, was the trigger points from fibromyalgia. They failed to x-ray the affected joints, so there's no past rule-out [of] diseases that mimic fibromyalgia, such as hypothyroidism, Addison's disease.

AR 39. Also he testified that plaintiff's depression might affect his self-reporting of his abilities. AR 39.

Kelly Wynn testified as a neutral vocational expert, AR 41, that plaintiff's past work as an assistant manager at a pet store was light skilled; as a truck loader his work was heavy semi-skilled; and as a cashier, his work was light, unskilled. The administrative law judge asked Wynn whether an individual of plaintiff's age, education and work history, who retained the residual functional capacity to perform light work, could do plaintiff's past work. She testified that the individual could perform plaintiff's past work as an assistant

manager and cashier but not as a truck loader.  The administrative law judge asked her whether the same individual who could perform only sedentary work could perform plaintiff's past work.  She testified that he could not but that there were jobs available in the regional and national economy that the individual could perform.  AR 42-43.  Also, she testified that if the individual could work only four hours a day, had to take unscheduled breaks or miss more than three days a month, there would be no jobs that he could perform. AR 44-45.

### E.  Administrative Law Judge's Decision

In reaching her conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. §§ 404.1520.  At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since September 21, 2006, his amended alleged onset date.  At step two, she found that plaintiff had severe impairments of a fibromyalgia syndrome and a depressive disorder.  She noted that plaintiff asserted having some depression although he had had no treatment other than medication, which he believed to be sufficient.  The administrative law judge agreed with the state agency psychologist that plaintiff''s depression resulted in no more than mild limitations in any key area of functioning.  AR 15.

At step three, the administrative law judge found that plaintiff did not have an

11

impairment or combination of mental impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  Specifically, she found that plaintiff's depression did not meet or equal Listing 12.04, Affective Disorder. AR 16. Noting that plaintiff had had no treatment other than medication and he testified that the medication was sufficient.  AR 15.  She concluded that any resulting functional limitation would be mild.

The administrative law judge found that plaintiff retained the physical residual functional capacity to perform the full range of light work.  In making this determination, she found that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible to the extent that they would prohibit him from performing the full range of light work.  She considered plaintiff's activities of walking around his farm, driving into town, preparing meals, doing household chores and laundry and shopping.  AR 19.

In considering Dr. Hahn's opinion that plaintiff was unable to work for even four hours a day and was functionally unable to perform the demands of sedentary work, the administrative law judge noted that Hahn relied quite heavily on the subjective reports of symptoms and limitations reported by the plaintiff.  Also, she noted that Hahn's clinical notes included plaintiff's statements concerning his attempts to obtain disability benefits. However, Dr. Hahn's treatment notes indicated that plaintiff was doing relatively well on

his medications and that his fibromyalgia had improved by late 2008, with fewer trigger points. AR 16-18.

Also, in considering Dr. Hahn's opinion, the administrative law judge noted that there was evidence in the record that plaintiff had some drug-seeking behavior, which might serve as a motive for his allegations that his medications were ineffective.  She noted that the records reflected that plaintiff did not see an opthamologist or start medication as recommended.  Although plaintiff testified that the reason for not following through with recommended treatment was lack of insurance, the administrative law judge noted that the record indicated plaintiff had access to ongoing medical care when he wanted it.  She stated, "Considering these findings, I do not find the opinions expressed by Dr. Hahn persuasive."

At step four, the administrative law judge found that plaintiff was able to perform his past work as an assistant manager and cashier because it was light work.  Accordingly, she found he was not disabled.  AR 19-20.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, she must build a logical and accurate bridge from the evidence to her conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B.  Credibility

Plaintiff challenges the administrative law judge's determination that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible to the extent they would prohibit him from performing a full range of light work.  Under Social Security Ruling 96-7p, an administrative law judge must follow a

two-step process in evaluating an individual's own description of his or her impairments: 1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004). When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible. Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c). See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because that judge is in the best position to see and hear the witness and to determine credibility. Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000). In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2004); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result. Shramek, 226 F.3d at 811. The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record. Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

Plaintiff argues that because he suffered from fibromyalgia, the lack of objective medical findings was not a sufficient reason to reject his subjective symptoms. Plaintiff is correct that an administrative law judge cannot rely solely on the lack of objective medical findings to determine that plaintiff's fibromyalgia pain was not severe, Sarchet v. Chater, 78 F. 3d 305, 307 (7th Cir. 1996)(fibromyalgia case), but this is not what happened here. The administrative law judge relied on other factors to determine that plaintiff's testimony was not entirely credible.

The administrative law judge considered plaintiff's course of treatment, including the

16

fact that he reported doing relatively well on the medication patch and having fewer trigger points in late 2008 and early 2009.  AR 18.  Also, she considered evidence that plaintiff had not always been compliant with treatment recommendations, such as seeing an opthamologist and taking certain medications.   Further, the administrative law judge questioned plaintiff's credibility because of the evidence of drug-seeking behavior before his onset date.  AR 18-19.

In addition, the administrative law judge considered plaintiff's daily activities, including his walks around his farm, driving to town, preparing meals, doing laundry and shopping.  AR 19.  She stated that these activities were not limited to the extent that would be expected given plaintiff's testimony concerning his symptoms.  AR 19.

Plaintiff has not demonstrated that this is one of those rare occasions in which the court should disturb the credibility finding.  The administrative law judge built an accurate and logical bridge between the evidence and her conclusion that plaintiff's view of his limitations was not fully credible.  It is plain from the decision that the administrative law judge took into consideration plaintiff's course of treatment, the medical evidence and his activities in arriving at her credibility determination.  I am satisfied that her determination was not patently wrong.

## B.  Medical Opinions

Continuing his attack on the administrative law judge's opinion, plaintiff says that she gave too much weight to Nafoosi's opinion and not enough to the opinion of Dr. Hahn, his treating physician, and that she should not have disregarded the opinions of the state agency physicians.

Although an administrative law judge must consider all medical opinions of record, she is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. § 404.1527(d)(2).  When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors.  20 C.F.R. § 404.1527(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., and must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369,

18

375 (7th Cir. 1999).

In evaluating the medical opinions, the administrative law judge gave the greatest weight to the opinion of the neutral medical expert, Dr. Nafoosi.  She stated that Nafoosi had the benefit of being able to review the entire record, including evidence not previously considered at the lower levels of review and that he was present to hear plaintiff's testimony. AR 19.  Plaintiff takes issue with Nafoosi's testimony, contending that it was flawed because he relied on the lack of objective medical evidence to determine that plaintiff's fibromyalgia was disabling.  Plaintiff misinterprets Nafoosi's testimony.  Nafoosi testified that there were no x-ray results that might rule out other diseases.  Nafoosi did not say that this lack of x-rays showed that plaintiff did not have severe fibromyalgia, but rather that x-rays would have ruled out other diseases that "mimic fibromyalgia."  It is evident that Nafoosi is saying that x-ray results can be a useful way to reach an informed diagnosis of fibromyalgia.  In any event, Nafoosi testified that plaintiff did have fibromyalgia trigger points and that he had severe impairments of fibromyalgia and depression.  However, he found that neither impairment precluded plaintiff from performing light work.  I am not persuaded by plaintiff's argument that this opinion was flawed.

Also, plaintiff argues that the administrative law judge should have given more weight to the opinions of the state agency physicians who found plaintiff could perform only sedentary work.  However, the administrative law judge found that these October 30, 2006

19

and March 9, 2007 opinions were formed before plaintiff 's treating doctor observed fewer and milder trigger points in late 2008.  This later information that Nafoosi was able to consider.  AR 19.  This was another good reason for not giving these opinions more weight.

Finally, plaintiff contends that the administrative law judge erred in discounting the opinion of plaintiff's treating physician, Dr. Hahn.  On March 1, 2007 and September 2, 2008, Hahn opined that plaintiff could sit or stand or walk 30 minutes at a time, could carry five pounds and would have to take unscheduled breaks every hour and would miss more than three days a week each month.  In discounting this opinion, the administrative law judge stated that when finding these restrictions Hahn had relied heavily on plaintiff's reports of his symptoms and limitations.  AR 18.  In fact, plaintiff helped Hahn complete the multiple impairment questionnaire.

In addition, the administrative law judge concluded that Dr. Hahn had reasons to question the credibility of plaintiff's reports. She noted that plaintiff had reported to Hahn that his medications were ineffective for pain and had reported intolerable side effects to some of his medications.  The administrative law judge noted that Hahn should have considered evidence in the record that in 2004 plaintiff had exhibited drug seeking behavior because it suggested a motive for his allegations that his medications were ineffective.  AR 18.

Plaintiff argues that the administrative law judge's conclusion is not reasonable.

20

However, Dr. Hahn's treatment notes indicated that plaintiff had stopped taking medications (Cymbalta and Lyrica) on his own, borrowed a friend's pain patch, cut his pain patch in half and complained that his pain patch was ineffective. This evidence is consistent with the administrative law judge's conclusion.

It is well settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report based upon plaintiff's own statements of functional restrictions if administrative law judge finds plaintiff's subjective statements not credible); Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming administrative law judge's disregard of treating physician's opinion because opinion "was based largely upon claimant's self-reported symptoms" and not supported by objective medical evidence); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted). Because the administrative law judge had adequate grounds for discounting the credibility of plaintiff's subjective statements, it follows that she could reject any opinions that were based on those statements.

Also, in considering Dr. Hahn's opinion, the administrative law judge noted that

21

Hahn overlooked plaintiff's failure to comply with his treatment recommendations. Specifically, she noted that plaintiff had failed to see the opthamologist Hahn referred him to or to start medication as recommended,  AR 19, and she noted that plaintiff's claim of financial hardship was not a convincing explanation for his failure to comply with the recommendations.

Finally, the administrative law judge noted that it was possible that Hahn was expressing her opinion that plaintiff was totally disabled in response to plaintiff's requests. The administrative law judge based this conclusion on Hahn's treatment notes that plaintiff was seeking to obtain disability payments.  AR 18.  Although this conclusion is speculative, it was not the only reason that the administrative law judge rejected Hahn's opinion.  I am persuaded that she gave good reasons for rejecting Hahn's opinion.

Further, there is other evidence in the record that supports the administrative law judge's conclusion that plaintiff retained the residual functional capacity to perform light work.  Plaintiff's fibromyalgia was diagnosed in November 2003, but he worked until September 21, 2006.  There is no evidence that plaintiff's fibromyalgia worsened after 2006. In fact, the evidence is to the contrary; it was well controlled with medication and plaintiff had fewer trigger points in late 2008.  His March 2009 flare-up of his fibromyalgia symptoms occurred when he decided on his own to stop taking Lyrica.

Plaintiff's argument boils down to a disagreement about the manner in which the

22

administrative law judge weighed the competing medical opinions.  However, in a case such as this, in which the record supports more than one reasonable conclusion, a reviewing court must defer to the administrative law judge's reasoned consideration of the evidence. Hofslien, 439 F. 3d at 377 (administrative law judge determines how much weight to give various medical opinions and court will uphold that decision as long as it is supported by substantial evidence); White, 167 F.3d at 375 (court may not disturb administrative law judge's weighing of medical opinions if record supports it); 20 C.F.R. § 404.1527(d)(2) (describing factors administrative law judge must consider in weighing medical opinions). Because the administrative law judge gave good reasons for not giving significant weight to Hahn's opinion that plaintiff could not perform sedentary work or to the state agency physician's opinion that plaintiff was limited to sedentary work and for giving significant weight to Dr. Nafoosi's opinion, I see no reason to overturn that determination.

It is true, as plaintiff points out, that  a complaint of fibromyalgia cannot be dismissed for lack of objective medical evidence because its symptoms are subjective. Sarchet, 78 F. 3d at 306-08.  However, it takes more than a mere diagnosis of fibromyalgia to establish that an individual can or cannot perform a certain exertional level of work.  It is clear from the medical evidence that plaintiff had a severe impairment caused by fibromyalgia.  However, the administrative law judge found the impairment not so limiting as to affect plaintiff's ability to perform the full range of light work.  The only evidence that

23

plaintiff's pain from fibromyalgia interfered with his ability to do light work was plaintiff's testimony and the opinions of Dr. Hahn, which the administrative law judge found unpersuasive.  These findings of the administrative law judge were reasonable.  Substantial evidence supports the administrative law judge's conclusion that plaintiff was not disabled because she retained the residual functional capacity to perform light work and could perform her past work.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security is AFFIRMED and plaintiff Rick Devries's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 22d day of April, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

24